ROBERT FOSSETT *v.* THE STATE.

1. JURISDICTION — PRACTICE.— The District Court has no authority to transfer a felony case to the County Court; and therefore an order purporting to make such a transfer is a nullity, and does not divest the jurisdiction of the District Court. No order of the County Court to retransfer the case is requisite.

2. ILLEGAL MARKING OR BRANDING.— To constitute the offense of illegal marking or branding it is not sufficient that the accused marked or branded an animal not his own, without the consent of the owner. The intent to defraud is an essential ingredient of the offense, and must be established by evidence either affirmative or negative. It cannot be inferred from the naked fact that the accused marked or branded an animal not his own, without the owner's consent. See evidence *held* insufficient to establish the intent to defraud.

APPEAL from the District Court of Bosque. Tried below before the Hon. J. ABBOTT.

The indictment charged that the appellant, on April 20, 1880, did unlawfully mark one yearling, the same being cattle, and not being his property but the property of Ringgold Ellis, and without the consent of the said Ellis. The appellant was found guilty by the jury, and the term of two years in the penitentiary was assessed as his punishment.

A full statement of the evidence will be found in the opinion of this court. The Penal Code, article 756, makes the offense a felony by enacting that it shall be punished in the same manner as for theft of the animal; but, by inadvertence doubtless, this case was included in the order of the District Court transferring to the County Court a number of misdemeanor causes.

The Assistant Attorney General moved for a rehearing, and enforced his motion with a cogent argument on the evidence. But the motion was overruled.

*J. C. Jenkins,* for the appellant.

*H. Chilton,* Assistant Attorney General, for the State.

HURT, J. The appellant Fossett was convicted of marking a certain yearling, the property of Ringgold Ellis, with intent to defraud. Two questions will be considered:

1st. Had the District Court jurisdiction of the case, having transferred it to the County Court? We think it had. The order of transfer being a nullity, it was not necessary for the County Court to make an order sending the case back to the District Court. The statute provides in misdemeanors for a transfer by the District Court to the County Court, but there is no power to transfer a felony. There being no authority for the transfer, the case was legally in the District Court.

2d. Does the evidence support the verdict? We think it proper to give the entire statement of facts, which is as follows:

Ringgold Ellis, sworn for the State, says: "I know defendant. I live four miles south of him. On the 10th day of April, 1880, I missed three of my yearlings, the one in controversy being one of the three. I saw them last on the Thursday morning before, about 9 o'clock. They were with my cattle and near my house. My yearlings failed to come up as usual, and, as I was a juror in the District Court then in session, I could not hunt them; but, the Sunday following the last day I saw them, I looked for them and could not find them. Hearing that a herd of cattle had been driven from the neighborhood of Meridian, I followed it, and overtook it near Fort Worth, and found one of my yearlings. I there got information of my other two, and came home. I learned that the defendant had a pasture, and that, together with the information received at Fort Worth, caused me to go to the defendant's pasture, where I found my two yearlings. One of them was marked, which is the one in controversy. The other was not marked. The marked yearling was white and red-spotted, was larger than com-

mon yearlings, had been fed during winter and was fat and gentle. It was unmarked when it was driven away. The other was a red yearling. The defendant said he marked the red and white spotted yearling in his mark, and he drove it up and penned it. It was not branded. Defendant claimed it. I told the defendant to turn it out, or I would get it out before night by law. Defendant's father, who was present, told him to turn it out, and he did so. There was another yearling running near my house that had been taken for mine, but it belonged to Aaron Everett. I never gave my consent for defendant to mark my yearling. My yearling ran in Bosque county, State of Texas, and was taken from its range. Defendant did not claim the red unmarked yearling. He stated that it had jumped in the pasture."

S. M. Worley, for the State, says: "I went with Ellis to defendant's pasture, after his yearling. I know the yearling in controversy, owned its mother and milked her during the winter. The yearling was red and white spotted. I know that the one found in the defendant's pasture, marked in the defendant's mark, belonged to Ringgold Ellis. I know it well. Defendant said he marked and penned it, and claimed it was his, but at request of his father turned it out. It and the unmarked one took the road home, and I followed them to Ellis's house, and penned them. When they got in sight of home they lowed and ran home. The marked one was branded when they got home, and is there now. The unmarked yearling was red with mottled face."

Russell Seal, for defendant, says: "I know defendant and am in charge of his stock ranch in Palo Pinto county, and have been about three years. I milked the mother of the yearling in controversy last year. It was the property of the defendant. This cow and yearling were brought to this county some time in March, 1880. I assisted Sam Fossett, brother of defendant, to gather the

cattle, but did not come with them to Bosque county. Afterwards I came to Bosque county to defendant's house, and assisted him in getting up some of his yearlings to mark and brand. I drove up the yearling in controversy and penned it, and know it was the property of defendant. The defendant was not with me at the time. We started out together, but separated on the prairie. I got back with this and other cattle before he got in. We looked for the branding iron shortly before this, and could not find it. We would have branded the yearling at the time it was marked at the pen, if we had had the branding iron. I heard about Ellis being there and taking the yearling away, and never saw the one I drove after that. Was not there when the yearling was marked nor when Ellis came after it."

Cross:

"Don't remember what time the herd came down. I don't remember when I came, or how long it was after the herd left, or before this yearling was driven up. I don't recollect how long I stayed down here, or what time I went away. Defendant and I started out to hunt together, but separated; I went near Dewey's (east), and defendant south. I don't know on what day of the week or month this was. The defendant told me where this yearling ran, and I brought it back to the pen. I don't know what time the defendant got back. He brought three or four unmarked yearlings with him. I think the defendant cut out an unmarked yearling and turned it out, but it got back in the pasture. I think one of them was red and white speckled or spotted, but I did not notice its condition as to flesh. The yearling I brought was medium sized but not fat. It was red and white speckled, and was the one brought from Palo Pinto county. I could tell a yearling that had been fed well all winter; the one I drove up had not been, but had wintered on the grass, and was in ordinary living order."

Sam Fossett, for defendant, says: "I am a brother of the defendant, and a partner of his in stock business. I know the yearling in controversy. It belonged to defendant. I drove it to this county from Palo Pinto county. Seals assisted in gathering. I saw the yearling marked by defendant, which was afterwards taken by Ellis. It was the property of my brother. I knew it well. The branding iron was lost when this yearling was marked. There was another red yearling in the pasture, claimed by Ellis, that was not marked. It was a red mottled-faced yearling. The defendant and Seals drove up the yearling together. I was present and saw them when they drove up the yearlings. The red one was not claimed by the defendant."

Jo. Helton, for the defendant, says: "I know the defendant. I assisted him on the first Monday in April to round up and drive some cattle near Pilot Knob in this county. The defendant had a cow and yearling he said he had brought from Palo Pinto county. I saw a red yearling following us, trying to get in, and defendant said it might belong to some one over in town, and directed me to let it in. It was unmarked."

Cross:

"The yearling defendant said he brought from Palo Pinto county was marked. This was the first Monday in April, 1880. I met the defendant and Russell Seals on Thursday following, about 9 o'clock A. M., going south on Torrash road. Ellis lives south of this about three miles."

To constitute this offense the marking must be done with *intent* to *defraud*. The marking of the stock of another without his consent is not sufficient to the completion of the crime. The elements are:

1st. Marking the animal of another; 2d, without the consent of the owner; and, 3d, with intent to defraud.

Proof, therefore, that defendant marked the yearling of

Ellis without his consent fails to reach the required goal. The evidence must go beyond this, and clearly show the intent to defraud. Now, can this intent be drawn from the marking without his consent, the stock of another? In theft recent possession of stolen property alone is not sufficient. The analogy holds good in this case evidently, to wit, that the marking of the stock without the consent of the owner, standing alone, is insufficient to establish the fraudulent intent. When the marking of the animal of another without his consent is proved, to establish the fraudulent intent we must look to the surrounding facts,— the facts and circumstances which hover around and give character to the act. These can never be enumerated. The facts tending to prove the fraud are negative as well as affirmative. Let us suppose that the defendant marked the yearling without the consent of Ellis, the owner, and the evidence shows that defendant has no cattle, or that he had none of this description (there being no claim that he was acting for another), or that, when found in possession of the yearling with his mark on it, he stood mute and made no claim, etc. This evidence would be of a negative character, but very strong in its tendency to show fraud. On the other hand, suppose that the defendant marked the animal in an unusual place,— that he acted in a secret and clandestine manner; or that he made contradictory or unreasonable statements in regard to the matter. These would be affirmative facts clearly evincing fraud. We are not pretending to pass upon the sufficiency of the supposed cases, but give them in illustration.

Viewing the statement of facts in this case in the light of these principles, we are of the opinion that the evidence fails to support the verdict. There is no fact in the evidence, save the fact of marking the yearling of another without his consent, either affirmative or negative, which tended in the slightest degree to prove that the defendant

was actuated by a fraudulent or thievish intent. The animal was taken openly and penned in a public place, under an avowed claim of property. The other yearling was neither claimed nor marked. Passing strange, indeed, that the defendant should have intended the fraudulent appropriation of the one, and not the other!

We are thoroughly impressed with the belief that the contest was over the title to the property, and that, as the weight of the evidence was believed to be in favor of Ellis, the jury found against the defendant; thus hinging his guilt upon the title to the property alone. What a vast space between these premises and the conclusion thus drawn! Admit that the yearling was the property of Ellis, and that defendant marked it without his consent, guilt does not of necessity follow. The surrounding facts must carry the burden further, and clearly show fraud. This was not done, but, on the contrary, these facts, conceding the property to be that of Ellis, most clearly refute the idea of fraud.

The other points presented will not be noticed, as they will not arise again. The evidence failing to support the verdict, the court erred in refusing the defendant a new trial, and the judgment is reversed and cause remanded.

*Reversed and remanded.*